Announce the times will be as allotted to counsel. The first case today is number 171878, United States v. Luis G. Vazquez-Laureano. Ms. Padilla, good morning. Good morning, Attorney Tanayra Padilla-Rodriguez, representing Avalon, Mr. Vazquez-Laureano. I would like to reserve five minutes to reply. How much? Five minutes. Five minutes? Okay. Go ahead. Good morning. Avalon comes before this court because the district court entered a judgment against him for violations of two conditions of supervised release without observing minimum due process requirements. Particularly at the final revocation hearing, the court found Avalon guilty of two violations for which there was no previous finding of probable cause. Therefore, the judgments must be vacated. Additionally, we sustain that the sentence imposed is unreasonable because the Avalon could only be sentenced for one violation regarding the use of synthetic marijuana, which he admitted from the beginning and, in fashioning the sentence, the court could not rely on the two additional violations, nor on facts that were unknown to the Avalon at the time of sentencing. Counselor, at the final revocation proceeding, the defendant indicated that it was waiving hearing, and this was after having received written notice of the expansion of what was to be considered as a basis for revocation. Now, what are we to make of the affirmative waiver of hearing? Well, two days before the final revocation hearing, the probation officer filed a supplementary motion and a supplemental report regarding other facts and additional violations. I mean, it wasn't a long time, but it was two days before, and that was first met with silence. No objection was filed. No motion to continue was filed. And then I guess what I'm troubled with most is just the affirmative. We don't need a hearing without even conditioning it upon, okay, could we clarify the record as to what's before the court. Well, our position is that because there was no, the violations included in that supplemental report were not part of the preliminary hearing. And our position is that in order for a final revocation hearing to be conducted regarding a specific violation, Rule 32.1, which states the minimum constitutional requirement stated by the Supreme Court in Morrissey about the process due in revocation proceedings. Rule 32.1 specifically states that a preliminary hearing must be conducted and there must be a final probable cause before that violation could be referred for celebration of a final revocation hearing. But people waive their constitutional rights all the time. People waive indictment. People waive their right to trial, all the panoply of trial constitutional rights. I mean, why is this just not a sufficient waiver of the Rule 32 requirement? The motion was filed two days before, and that is important. And the, there was a final probable cause as to violations. When, and there was no ruling or acceptance of those, of that report from the court. I think that as a matter of law, that report maybe could be taken into consideration for some other reason. But given that those violations were not included in the preliminary hearing, I think counsel was right to assume that there was no waiver of a final revocation hearing regarding those violations. Because as a matter of law, at least an opportunity to a preliminary hearing has to be available in order for a violation to be even considered in a final revocation hearing. That's what Rule 32.1 states. And I think that's what the constitutional rule in Morrissey requires. Counsel, when the, before the court announced its sentence, it identified the violations that it was factoring into its sentence. And it did mention the failure to notify probation about the termination of his employment. Isn't that correct? The court did refer to that. And there was no, at that point, there was no objection. No one said, Judge, you can't do that. We only received notice of that violation two days before. There's been no probable cause evaluation of that. You can't factor that violation into your decision. There was no such objection. Isn't that true? Reading the transcript, and I discussed that in my reply brief, reading the transcript, I think it's, the fact is that the assistant federal public defender, when the court mentioned that, he thought that that was being taken into consideration as a factor maybe for sentencing. It is not clear from the transcript, and at least for me, that when the court mentioned that, it was clear that the court was going to find the defendant guilty of that violation. Because that fact could have been taken into consideration maybe to fashion a sentence as another fact. But it was not clear, for what I see in the transcript, that the judge was going to find the defendant guilty of that violation. So the judge then does impose the sentence and does it with a fairly summary explanation, and then counsel challenges the sentence. And then the judge begins to explain more fully some of the considerations that led to the sentence. Now, your claim is that when he does that, you learn, for the first time, a lot of facts that he was relying upon for that sentence that you didn't even know about. Could you summarize for us the facts that you learned about for the first time the court was relying upon? And where those facts might have come from, to your understanding? Yes. Particularly in page 14 of the transcript, the probation officer has received information from Mr. Neftali and from her iPhone. She stated to him that he was not going. This was at 4.50. She also stated to the psychologist at 5.05 that he is tired and he doesn't want to do anything, not even work. She complained to the psychologist that he was tired, and that's why he did not feel like he was going to go to treatment on July the 14th. That is the only part of the record where you're going to find those particular facts. So where does that information come from? We can only speculate that maybe from the transcript there was a sidebar with the probation officer. Right. But we can only speculate that it was received then. But there's no other document in the record that contains that information. And that's why the assistant district attorney immediately after, he said, excuse me, the judge, he also refers to the fact that these, with respect to the treatment, that treatment cost the government $7,000. He lost his job due to frequent absences. Where does, to your knowledge, where do all those details come from? Those details, some of those details probably were part of a previous process. I'm sorry, of what? A previous process of revocation that was held from the same defendant probably six months before. And there was some information there and also information provided by the probation officer. So is it your position that if that information was accessible to the court, is it your position that if the court was going to rely on that kind of detail, that should have been disclosed to defense counsel so defense counsel could respond to it? Yes. As a matter of, yes. Recently this court, and regarding that issue, recently this court in U.S. versus DOS, this court established that even applying the most lax standard regarding violations from the sentencing guidelines, advance notice may be required when a sentencing court proposes to adopt a variant sentence relying on some ground or factor that would unfairly surprise competent and reasonable prepared counsel. And I think that's what happened in this case. So Judge Thompson, with her initial question, referred to the waiver in this case. I mean, how do you, given that there was no request at this point for any kind of evidentiary hearing, correct? I mean, that was waived for purposes of this final. There was no demand that evidence be put on at this final revocation hearing. You were just going to go directly to sentencing, correct? Correct. So how does that waiver affect what you now say were all these new facts from defense counsel's perspective that were introduced? Doesn't the waiver cover that scenario as well? And if not, why not? Well, the waiver could not cover any violation or any finding of guilt of a violation that was not found probable cause, that was not part of the problem of the preliminary hearing. That's a fair argument. Regarding the sentencing factors taken into consideration, I think if the court was going to take into consideration factors that were nowhere to be found in the record of the case, a notice before a waiver, a notice was necessary. Because even if there was a waiver, counsel did not have an opportunity to even consider that this new information was going to be taken into consideration. And I'm referring to the information that is not in that supplemental report or in any other document. I can understand the waiver regarding the information included in the motion filed two days before, but not regarding information that was not even in any document. I don't think you can waive a right regarding that issue because the counsel just didn't know about that information. And a waiver has to be knowledgeable. And I just need to just try to pin down more specifically what you're referring to, because in response to Judge Lopez's question, you pointed to the information about his loss of employment and the costs. And you said that you thought that may have come from the earlier probation revocation proceeding, which I think took place in September of 16. Is that what you're referring to? No. The loss of employment was included in the supplemental motion filed two days before the preliminary hearing. And it bears to notice that the probation officer had that information since August 11, the day after the preliminary hearing. And it wasn't until two days before the final revocation hearing that that information was disclosed to the defendant. So could you just pin down for us what information you're saying was completely unknown to the defendant at the time the court passed sentence and which the court took into consideration? Okay. It's in the page 14 of the transcript. I read it before. The probation officer has received information from Mr. Neftali, the psychologist, and from her iPhone. She stated to him that he was not going. This was at 4.50 p.m. So the information about his specific reason, a different reason for why he didn't show up on the 14th? Yeah, and the conversations and phone calls and hours. That information that you will find in page 14 of the transcript, that's the only part of the record that that information is on. Okay. So it's just that one conversation about why he didn't show up on the 14th? There are a few. I think there are like three phone calls or conversations there. Right. But all surrounding the 14th? Yes. Yes. Okay. Which was the violation for which Magister Judge had not found probable cause after a hearing and hearing testimony of the witnesses. And that might matter because it suggests he was playing games with respect to these appointments. I mean, there was some suggestion that he had a good reason not to make the appointment on the 14th, some car trouble or something like this. And now these statements from his girlfriend suggest that was all a ruse, that he just didn't want to go. Is that why it might matter? It matters because those statements are contradictory to what was the evidence, the testimony of the girlfriend on the preliminary hearing under oath and the one that Magister Judge McGiven heard. And he gave credibility to that testimony. So it matters because it contradicts what was established in our formal hearing. And that formal hearing has more weight than a statement that we don't even know where it comes from. And just to be clear in terms of chronology, what you just put on the record about the various conversations about the July 14th appointment, were those statements made by the judge when he was passing sentence? Yes. Or was it made by the judge when he was talking about what he was taking into consideration, but before he actually passed sentence? No, he has stated the sentence. And then when the assistant federal public defender objected, he explained the reasons. And when he explained the reasons for the sentence, he established those facts that I just read. Okay. Thank you. Thank you. Mr. Handel, good morning. Good morning, Your Honors. And may it please the Court, Josh Handel for the United States. Over the year and a half leading up to his ultimate revocation, Mr. Vasquez-Loreano demonstrated time and time again that he was unable or unwilling to comply with the conditions of his supervised release. All right. So at the probable cause hearing, when the magistrate judge made a determination that the government hadn't put on enough evidence for the court to say one way or the other whether the 14th constituted a violation, why wouldn't we consider that a lack of a probable cause determination, which should have, therefore, without anything more specific, meant that the court couldn't revisit what happened on the 14th? Well, Judge Thompson, so taking that in a couple of different parts. First of all, you're correct that the magistrate judge did not enter a probable cause finding as to July 14th. We don't understand that to mean that the – Counsel, you can't. The court can't abstain and say, well, I can't find it one way or the other. I mean, basically that meant that July 14th, that charge was gone. I don't know how the government could revive it two days before the final hearing. I mean, again, that charge was gone. Under what authority can you revive it in light of the fact that the judge found that there wasn't enough evidence to support a probable cause determination? Well, Your Honor, neither the government nor the probation officer tried to revive the July 14th violation two days before the final hearing. In fact, the supplemental motion – Well, excuse me. You basically told the court disregard that July 13th finding. Forget about that. It's really the July 14th one that matters. That's the one we're going to focus on. Isn't that what happened? No, Your Honor, and I apologize if I wasn't clear about that. The supplemental motion that the probation officer filed two days prior to the ultimate, the final revocation hearing, listed two additional absences on June 22nd and June 30th, and it withdrew the absence on July 14th that the magistrate judge had found probable cause. You mean the 13th? You mean the 13th? 13th. Yeah, you mean the 13th. The 13th. Yes, you're correct. I'm sorry. It withdrew the violation on the 13th that the magistrate judge had advanced to the district court. And it didn't say anything about July 14th in that supplemental motion. The government didn't say anything about July 14th in the final revocation hearing. So, you know, I think that a lot of this is hanging on one controverted absence underlying one of the three violations that were found here. I think that we could get rid of that altogether, and it wouldn't make any difference in the statutory sense. I'm sorry. You say somehow July 14th doesn't matter, but when pressed by counsel, the judge went into all this detail about what happened on July 14th, statements of his girlfriend about what was going on on the 14th. So I don't know how you can say that July 14th didn't matter when the court spent a lot of time talking about why July 14th mattered to him. Well, I think the reason is that even if it was the basis of sentencing consideration rather than a finding of a violation hearing, he spent a lot of time talking about it and factoring the facts of that into the ultimate sentence that he determined was appropriate. Certainly. So if we look at the transcript from the final revocation hearing, I think the reason that the district court spent so much time going through the contradictory testimony that had been received by the magistrate judge and the probation office and the district court as to the July 14th absence is because that's the only component of the sentencing rationale or any of the allegations here that defense counsel objected to. I don't think that it's fair to read into that, that the July 14th absence alone, independent of the two other absences that were established, independent of the failure to notify of the termination, independent of the admitted failed drug test, I don't think it's fair to read the extended discussion of that as being the driving force of the sentence here. Why? I'm sorry? Why? I mean, why would he talk about it extensively, as you just put it, if it wasn't at least important in the judge's mind? Well, I think, again, because that's what defense counsel was pressing on. Defense counsel did not object to any of the other violations. And, again, I would say. I'm sorry. Do you concede that the particular details of the justification of lack thereof and not showing up for the 14th was debuted for the first time during the judge's explanation of his sentence? I don't see anywhere else in the record that we have the specific comment about Mr. Vasquez-Loreano not showing up for that hearing because he was tired. I think I believe that was what the district court said. There was contradictory testimony offered at the probable cause hearing as to what was going on that day, specifically whether Mr. Vasquez-Loreano's partner had shown up to the office that day or was instead with him trying to get their vehicle towed. There was a contradiction there between the testimony of Dr. Diaz. But that was the lack of the probable cause finding. It was, Your Honor. I would point out, though, that while it's true that if the magistrate judge at the preliminary hearing finds that there is no probable cause that there has been any violation of supervised release, at that point the magistrate judge is supposed to terminate the detention and not forward anything to the district court. The converse is not true that the government has to put on all of its possible allegations and evidence at that initial hearing. But you've got to give them notice. I'm sorry? You've got to give them notice of the basis of the violation. Well, in connection with the final revocation hearing, Rule 32.1 sets out a whole basket of independent procedural protections that don't depend on what happened at the earlier hearing before the magistrate judge. So the hearing before the magistrate judge is only to determine whether the government has justification for continued detention pending the ultimate merits determination before the district court. Once you get over that hurdle of the government demonstrating that it has justification for the detention in the form of probable cause that there has been some violation of the conditions of supervised release, then a whole new basket of procedural protections applies. And those are the ones that are spelled out in Rule 32.1b to a through e. So that's where we get written notice of the alleged violations, disclosure of evidence and opportunity to appear. But just as a basic proposition of law, and I think it's certainly embodied in the rules too, the defense counsel is entitled to understand what facts the judge is relying upon in making the sentencing determination. The basic claim here is that the court revealed that there were all these details, all these facts about what happened on the 14th, about the cost to the government of the medical treatment, about the reason for his employment termination. All of these things defense counsel was learning for the first time. Do you even know where all those facts came from? Well, Your Honor, specifically with respect to the cause of his termination, the frequent absences point is made on page 2 of the supplemental motion that was issued two days prior to the hearing. So I don't think that we can treat that as similar to the information about what the $7,000 cost and all these detailed explanations of his girlfriend about why he wasn't showing up on the 14th. Where does that come from? Do you even know where that came from? I don't, Your Honor. Well, isn't that pretty troubling? I mean, is it possible that the court learned that from probation? It is. Now, probation can talk to the judge for sure, but probation cannot disclose new facts to the judge that the defense counsel was unaware of so that the judge can factor that into the sentencing. Isn't it a fair inference that that's exactly what happened here? It's very possible, Your Honor. I did not prosecute this case in the first instance, so I'm not exactly sure of everything that happened at every hearing. But if that is what happened, could you defend that? If that is what happened, it may constitute error with respect to that one specific point. Again, I would point out that what we are talking about here is one missed appointment out of three missed appointments that are underlying one out of three violations of supervised release. So I do not think it is remotely fair to say that the July 14th missed appointment, standing alone, is the reason that the district court entered the sentence that it did. I think we have to look at the totality of the circumstances. This Court's case law tells us that we have to look at the totality of the circumstances and see whether, as you said under SOTO-SOTO, there is a plausible sentencing rationale and a defensible result. And both of those criteria are met here, no matter what we do with the July 14th date. Do we have an admission about the mistreatments on the 22nd and the 30th? We don't have an explicit admission, but we have the waiver of the evidentiary component of the final revocation hearing, which creates a legal admission after having received notice. What defense counsel says with respect to the waiver, it was our understanding that the violations that were before the judge were the use of the synthetic marijuana and the finding of a mistreatment on the 13th. That's what we thought was going to be before the court, not all these other charges. Is that not a fair understanding by defense counsel of the violations that the court was going to consider? I don't think so, Your Honor, because they did receive written notice prior to the hearing, which is all that Rule 32.1 requires in connection with the final revocation hearing. And after the district court explained its sentence and went through exactly every violation that it was pinpointing, there was no objection from defense counsel as to the failure to notify of termination or as to the absences on June 22nd or June 30th. We would expect that if those were coming out of the clear blue sky and defense counsel and the defendant had no idea that these were pending against him, that at that point he would have strenuously objected to the inclusion of those in the judgment of violation and revocation. So, again, I would go back to the totality of the circumstances here. In explaining its sentence, the district court stated that Mr. Vasquez-Loreano had shown a lack of respect toward the court and the supervision process and that a stringent sentence was necessary in light of the special consideration given to him during the first revocation hearing in December of 2016. A defendant's failure to make the most of a second chance afforded through judicial grace is certainly a plausible rationale for a much harsher penalty on the second go-around. And that's what we got here. And the result here is likewise defensible because Mr. Vasquez-Loreano has shown that despite multiple chances from the district court and despite outpatient mental health and substance abuse treatment paid for by the government, he's been able to consistently stay away from drugs only when he is in jail or under closely monitored home confinement. So the district court's determination that this case warranted a statutory maximum sentence was reasonable. There's no basis for vacating that judgment and there's no likelihood that the court would reach a different conclusion on remand. If you were to remand this case, we would go back and there would be perhaps a slightly more comprehensive process, but you would still have at least two absences from mental health and substance abuse treatment that the defendant has never substantively contested. You would still have the failure to notify the probation officer of his termination and you would still have the admitted drug use seven months after the court exercised pretty remarkable grace in not imposing any significant consequences for a whole rash of prior violations. Do you know if the cost of drug treatment is consistent across the board and if that's something that folks practicing in this jurisdiction would have common knowledge about? Judge Thompson, I don't know that information. I'm sorry. I'm happy to offer supplemental briefing if it would be helpful. So you're making a harmless error argument, really. You're saying that even if the judge became aware of additional facts not known to defense counsel, most likely through a conversation with probation and even acknowledging that that's not the way the process is supposed to work, it just doesn't matter because it truly did. There clearly were some violations here, the drug use, the mistreatment, and apparently the failure to disclose to probation the termination of employment. Because of that, this breach of the rules about disclosing all facts that are important to the judge, none of that matters. Is that basically your argument? Well, Your Honor, it's not. I wouldn't phrase it as none of it matters. That's what harmless error means. It just doesn't matter. Yes. I would say that none of those, assuming, arguendo, that those were errors, none of that erroneous conduct impacted the sentence here. The duration of the sentence. I'm sorry. The problem is, I mean, clearly it didn't impact the finding of violation. The question is, did it impact the duration of the sentence? That's correct, Your Honor. And I'm saying that, again, a single date out of three dates that were absences, out of three violations here that have not been substantively contested, at least one of which has been expressly admitted and the other two legally admitted, I don't think it's fair to read this record. What do you mean legally admitted? Legally admitted in the sense that the defendant decided to forego his evidentiary hearing as part of the revocation process and then did not object after the district court listed those violations. And I'm saying, again, that the single controverted date here, July 14th, and whether the defendant did not show up for that date because he had car trouble or because he had some other conflict or because he was sick or because he was tired as various- Or because the court found that there was no probable cause in the first place. That's correct, that the magistrate judge found that. Again, I would say that under the bifurcated supervised release revocation process outlined in 32.1, a magistrate judge's determination is looking at something different than the district court is in its ultimate revocation hearing. The magistrate judge is just trying to decide whether there is enough evidence of some violation to justify the detention. He is not necessarily looking at the entire comprehensive record, all possible allegations, all possible evidence and factors. So unless the court has further questions, I see that my time is running out. That doesn't make any sense. You have three seconds. I would respectfully request that you affirm the judgment below. Thank you. Thank you. It is clear that the judge relied on the facts of the 14th of July to determine that lengthy sentence. Why do you address the harmless error argument? Excuse me? How do you address the harmless error argument? When the counsel asked the judge to explain why he imposed the statutory maximum, the judge explained the facts that he learned about the 14th. So it is from the transcript you will see that that was the basis for the length of the sentence. Additionally, the argument of the government cannot hold because basically what the government is saying is that we can find probable cause for one violation, and two days before the final revocation hearing, the probation officer can file a motion with 1,000 additional violations and a final revocation hearing regarding those 1,000 violations that were not part of a preliminary hearing could be part of that final revocation hearing. So why didn't counsel object to that? Very short notice, but it was clear from that motion that the government was going to ask the judge to consider some new violations, specifically some more treatment dates. Why didn't defense counsel say, hey, wait a minute, if you're going to allege these new violations, we want an evidentiary hearing on that? And defense counsel didn't do that. Because what the probation officer did, she asked for that, but the court didn't rule on that. I'm sorry, who asked? The probation officer in her motion, she filed those additional violations, and she asked the court to include those violations in the final revocation hearing. The court did not rule that, but as a matter of law, I think that the Assistant Federal Public Defender just relying on Rule 32.1, which requires a hearing on probable cause. Rule 32.1 is a constitutional rule. Wait a minute, wait a minute. What do you mean the court didn't rule on it? Didn't the court rule on it by virtue of the fact that it advised the defendant of their rights to hearing and present testimony and then proceed after the defendant waived, with the defendant having clear notice of what at least the court was going to take into consideration based upon the written filing? There's a difference between taking into consideration those facts for purposes of maybe a furnishing a sentence, but to find the defendant guilty of two violations that were, one of those there was a finding of no probable cause, and the other one was not even part of the preliminary hearing. I don't think that any counsel could expect that. Even though the probation officer filed a memorandum asking the court to take into consideration those violations, I think that Rule 32.1 establishes that there cannot be a final revocation hearing unless a preliminary hearing was at least available regarding the violation. The rule said a magistrate must conduct a preliminary hearing to determine whether there is probable cause. And then it says if the judge finds probable cause, the judge must conduct a revocation hearing. If the judge does not find probable cause, the judge must dismiss the proceeding. And I don't think any counsel would have thought that without a previous determination of probable cause or an actual determination of no probable cause, his client was subject to being found guilty of those two violations. I don't think that's reasonable. I'd like to get something clear. The judge specifically says when he's itemizing the violations that underlie the revocation of supervised release, he refers generally to failing to report for mental health treatment. He doesn't specify which dates he has in mind. Now, we know we've been talking about July 13th, July 14th, July 22nd, July 30th. The government said in approaching the final revocation hearing, let's forget about the 13th. We're going to focus on the 14th. Then all this detail comes in about why the judge was focused on the 14th, all these communications from the girlfriend and so forth. Nobody says anything about the 22nd or the 30th, so far as I can tell. But the government says, well, the defendant admitted to the 22nd and the 30th. My basic question is, what date are we talking about when the judge says a failure to report for mental health treatment? Pursuant to your understanding, what date are we talking about? July 13th. July? 13th, because that was the date that the magistrate judge found probable cause for. And the government has said, but we don't think it's fair to focus on that, because on the 13th they found out, well, apparently there was an agreed upon postponement until the 14th. Now it's the 14th that matters. And now it's the 14th that you have all these disputes about what really happened there. Yes, so the way – What about the 22nd and the 30th? That was included in a – again, that was included in the motion file. Did he admit to those? No. No, no. That was included in the motion file two days before. And at most, that could be taken into consideration for purpose of sentencing, at most. But we – I have to be clear that our position is that two days before a final revocation hearing, when the officer had that information, one day after the preliminary revocation hearing is not sufficient notice. But those two violations maybe, maybe at most, could have been taken into consideration for fashioning a sentence. But in no way he could have been found guilty of that violation. Thank you. Thank you.